UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN WATKINS, ET AL.                    CIVIL ACTION

VERSUS                                   NO. 14-265

TOMMY ESCHETE, ET AL.                    SECTION "B"(4)

ORDER AND REASONS

I.   NATURE OF MOTION AND RELIEF SOUGHT

Before the Court are Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim (Rec. Doc. 5) and Plaintiffs' Response thereto (Rec. Doc. 11).

**IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, as explained fully below.

II.  PROCEDURAL HISTORY AND FACTS OF THE CASE

Plaintiffs, Glenn and Jonathan Watkins, bring this action for damages under 42 U.S.C. § 1983 against Defendants, Tommy Eschete, the Mayor of Thibodaux, Louisiana (individually and in his official capacity); Thibodaux Police officers Jamey Fontenot, Ricky Ross, Varick Taylor, Jr. (individually and in their official capacities); Scott Silverii, the Chief of the Thibodaux Police Department (individually and in his official capacity); and the City of Thibodaux.[1] Plaintiffs' claims arise out of their arrest in connection with an investigation into the

---

[1] The Complaint also names Shontell Clark and "other unknown conspirators" as defendants. However, these parties have not joined in the instant motion.

slashing of the tires of a number of vehicles owned by the Thibodaux Police Department (the "Police Department") on two occasions, in May and June of 2011. (See Rec. Doc. 1 at 3-4). The Police Department enlisted the aid of the Lafourche Parish Sheriff's Office (the "Sheriff's Office") to investigate the incident. (Rec. Doc. 5-1 at 1). According to Plaintiffs, during the course of the investigation, Defendants Silverii, Fontenot, and/or Ross colluded with Shontell Clark, an individual incarcerated at the Lafourche Parish Detention Center on unrelated charges and alleged to be a confidential informant, to assist him in fabricating a story that would implicate Plaintiffs in the tire-slashing incident. (Rec. Doc. 1 at 5-6). Clark's participation was allegedly solicited in return for the dismissal of certain charges pending against him. (Rec. Doc. 1 at 5-6). Although the Complaint sets out the facts rather disjointedly, the ostensible motivation for the alleged collusion was for Defendant Silverii to implicate non-party Police Captain, Calvin Cooks, in the tire-slashing incident for political reasons. (See Rec. Doc. 1 at 5).[2] To this end,

---

[2] Plaintiffs allege that in April 2011, Thibodaux City Councilwoman, Constance Johnson (a non-party), received several telephone calls from Clark stating that Defendant Silverii harassed and threatened him during a period of release from prison in an attempt to solicit a meeting, ostensibly for purposes of furthering the alleged conspiracy. (Rec. Doc. 1 at 4). Plaintiffs further allege that Councilwoman Johnson sought to have the Council open an investigation into the tire-slashing matter, which efforts were publicly opposed by Defendant Mayor Eschete. *Id.*

2

according to Plaintiffs, Defendants directed Clark to notify Sheriff's Office investigators he had been informed that Captain Cooks paid Plaintiffs to slash the tires of the police vehicles. (Rec. Doc. 1 at 6). The facts indicate that at some point prior to Clark's communication with investigators, he and Plaintiff, Jonathan Watkins, were held in the same housing unit of the Lafourche Parish Detention Center. (Rec. Doc. 1 at 5-6, Rec. Doc. 5-1 at 3). Neither party addresses the significance of this fact. The implication, however, is that the period of concurrent incarceration would have afforded Clark opportunity to learn about the tire-slashing plot from Plaintiff Jonathan Watkins.[3]

Based on the information provided by Clark to investigators, Plaintiff, Jonathan Watkins, was approached on August 16, 2011 and, after waiving his rights, confessed to the tire slashing while also implicating Plaintiff, Glenn Watkins. (Rec. Doc. 5-1 at 5). An arrest warrant was issued for Glenn Watkins on August 16, 2011 and he was arrested on August 19, 2011. *Id.* at 6. Although he appears to have initially contested his involvement, Glenn Watkins ultimately confessed on October 17, 2011. *Id.* at 7. For reasons that are not explained, the charges against both Plaintiffs were later dismissed by the

---

[3] Plaintiffs also allege that Jonathan Watkins suffers from mental illness and is a diagnosed schizophrenic. In the absence of any allegations of coercion, however, this fact is immaterial. (Rec. Doc. 1 at 6).

Lafourche Parish District Attorney on or about February 7, 2013. (Rec. Doc. 1 at 10).

Plaintiffs' Complaint seeks damages under 42 U.S.C. § 1983 in connection with alleged violations of their constitutional rights "to freedom from illegal seizure of their person, freedom from unlawful arrest, and freedom from illegal detention and imprisonment," as well as Defendants' knowing pursuit of "false arrests and unjust prosecutions." (Rec. Doc. 1 at 7-8). Finally, Plaintiffs invoke this Court's pendent jurisdiction "to entertain claims arising under state law." (Rec. Doc. 1 at 2).

### III. CONTENTIONS OF MOVANTS

Defendants move for dismissal on two primary grounds. First, they argue any causes of action arising out of the alleged acts of Defendants were prescribed by the time of the filing of the instant suit on February 5, 2014, under the one-year prescriptive period of La. Civ. Code art. 3492 for delictual actions, made applicable under pertinent federal case law. *See*, *e.g.*, *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1983, 1947-1950, 85 L.Ed.2d 254 (1985). Defendants characterize Plaintiffs' claims as ones for involuntary confession, wrongful arrest, and wrongful prosecution. (See Rec. Doc. 5-1 at 5-8). They argue that a separate prescriptive period

4

runs for each claim, and as to each Plaintiff respectively, as follows:[4]

*Plaintiff Jonathan Watkins*

(1)   Involuntary Confession: Jonathan Watkins confessed to his involvement in the tire-slashing incident on August 16, 2011. Any claims relating to his confession prescribed on August 16, 2012.

(2)   Wrongful Arrest: Jonathan Watkins was arrested in connection with the incident on August 19, 2011. His claim should have prescribed on August 19, 2012, one-year from the date of his knowledge of his arrest.[5]

(3)   Wrongful Prosecution: Jonathan Watkins pled guilty to eleven counts of property damage on March 26, 2012. As

---

[4] Defendants correctly point out that Plaintiffs fail to supply a number of the pertinent dates for purposes of computing limitations periods in their Complaint. (See Rec. Doc. 5-1 at 4-5). Although a district court cannot look beyond the pleadings in deciding a 12(b)(6) motion, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 1988); *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994). Defendants have attached to their motion a number of items of public record, including Applications for Arrest Warrants, the Warrants themselves, Arrest forms, and certain news articles. (See Rec. Docs 5-2 – 5-12). Accordingly, the Court refers to these items for the limited purpose of taking judicial notice of the dates contained therein; the Court declines Defendants' invitation to convert the instant motion into one for summary judgment under Fed. R. Civ. P. 56. In any event, the general timeline is not a matter of dispute between the parties. Their differences inhere in the applicable law and the computation of the various limitations periods.

[5] Defendants note that Jonathan Watkins was already incarcerated on unrelated charges at the time of his "arrest" relating to the incident in question. As such, they argue that the prescriptive period must necessarily run from the date of his arrest, rather than the date of his release, in light of the difficulty of attempting to determine when he was "released" for each of the different charges. For the reasons discussed in the Law and Analysis section, *infra*, it is unnecessary to reach the merits of Defendants' contention in this respect.

such, his claim for wrongful prosecution prescribed on March 26, 2013, or at the latest, on February 8, 2014 (the apparent date of his release).[6]

*Plaintiff Glenn Watkins*

(1)   Involuntary Confession: Glenn Watkins confessed to his involvement in the incident on October 17, 2011; his claims relating thereto prescribed on October 17, 2012.

(2)   Wrongful Arrest: Glenn Watkins' claims relating to his arrest prescribed on August 19, 2012, one year from the date of his arrest.

(3)   Wrongful Prosecution: Charges were dropped by the District Attorney prior to trial, so any claims by Glenn Watkins relating to wrongful prosecution are moot.

Defendants' second basis for moving to dismiss is that they are not properly made parties to Plaintiffs' causes of action. According to Defendants, the acts of which Plaintiffs complain were committed by members of the Lafourche Parish Sheriff's

---

[6] It should be noted that Defendants appear to concede timeliness of this claim if February 8 is the applicable date, given that this action was filed on February 5, 2013. However, they argue, even if this later date applies, Defendants are not a prosecuting authority and are therefore incorrectly named as defendants for purposes of the claim of malicious prosecution. The Court also notes that Plaintiffs place the date of dismissal of charges at February 9, 2013 (See Rec. Doc. 14 at 3), although this difference has no bearing on the timeliness of the claim.

Office, who conducted the investigation and arrests leading up to the subsequent prosecution by the Lafourche Parish District Attorney's Office. Defendants, various members of the Thibodaux Police Department and Mayor's Office, as well as the City itself, did not commit the acts complained of.

## IV.  CONTENTIONS OF OPPONENTS

Plaintiffs challenge Defendants' characterization of their claims and argue instead that they assert a cause of action similar to the common law tort of malicious prosecution, which, rather than a constitutional violation in its own right, relies upon a denial of various other rights under the constitution. (See Rec. Doc. 14 at 1). Plaintiffs aver that their Complaint sufficiently alleges violations of their due process rights for purposes of federal pleading standards.[7] (Rec. Doc. 14 at 2). Further, although they concede application of Louisiana's one-year prescriptive period, they dispute Defendants' application of this period for purposes of computing accrual. Plaintiffs cite *Heck v. Humphrey*, 512 U.S. 477 (1994), for the proposition that an action under § 1983 brought to call into question or otherwise invalidate a conviction or sentence accrues starting

---

[7] For reasons stated fully in the Law and Analysis section, *infra*, Plaintiffs' reliance on due process principles under the Fourteenth Amendment in their Response (Rec. Doc. 14) is misguided. Nevertheless, the focus of the Complaint itself (Rec. Doc. 1) is not constrained to causes of action arising under the Fourteenth Amendment, as claims are asserted under the broader umbrella of the federal constitution as a whole. Accordingly, at least one cause of action survives the instant motion.

7

from the date the underlying conviction or sentence is reversed, expunged, or declared invalid. (Rec. Doc. 14 at 3-4). As such, Plaintiffs contend they had no cause of action until the state court vacated their guilty pleas and the District Attorney dismissed the charges against them, which occurred sometime between February 7 and 9, 2014, and would render the instant action, filed February 5, timely. (Rec. Doc. 14 at 3-4). Finally, Plaintiffs contend that they have asserted actionable claims against Defendants for their involvement in instigating the chain of events culminating in their arrests and charges, notwithstanding the fact that Lafourche Parish agencies ultimately executed the arrests and prosecutions. (See Rec. Doc. 14 at 4 (citing *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992)("It is no answer that [he] could not have terminated the proceedings unilaterally once the wheels of the criminal justice system were already in motion.")).

### V.   LAW AND ANALYSIS

#### A.   Motion to Dismiss Standard

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

8

*Bell Atl. Corp. V. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge[] their claims

across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B.   Claims Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"The first inquiry in any 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988)(citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Only federal rights give rise to 1983 suits; claims arising out of tort law must be remedied in state court under traditional tort-law principles. *Baker*, 443 U.S. at 146.

**C. Limitations Defenses**

The Court turns first to Defendants' asserted limitations defenses to determine whether, assuming Plaintiffs have properly pled any of their asserted causes of action, any of these claims are time-barred. Although defenses are generally not the proper subject of a Rule 12(b)(6) motion, certain affirmative defenses

10

that clearly appear on the face of the plaintiff's complaint—most commonly that the limitations or prescriptive period has run—may properly be asserted by way of such a motion. *See*, *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, n.3 (5th Cir. 1997), *accord*, *Kansa Reinsurance Co., Ltd. V. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Sheehan v. Ryan*, 111 F. Supp. 2d 792, 794 (W.D. La. 2000)).

At the outset it is noted that although the length of the prescriptive period for a § 1983 claim is furnished by applicable state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007). In *Wallace v. Kato*, *supra*, the Supreme Court held "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run *at the time the claimant becomes detained pursuant to legal process*." 549 U.S. at 397. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." *Id.* at 390. In the present case, Glenn and Jonathan Watkins were arrested pursuant to arrest warrants executed on

11

August 16 and 19, 2011, respectively. (See Rec. Doc. 5-8 at 3, 5-4 at 4). Plaintiffs have not asserted, and indeed nothing in the pleadings suggests grounds for, a challenge to the validity of the issuance of these warrants. Thus, for present purposes, there was no period during which Plaintiffs were not held pursuant to "legal process" (i.e., they were always held pursuant to legal process) as that term is understood in the context of an action for false arrest.[8] Thus, as the Court noted in *Wallace*, once the Plaintiffs became held pursuant to legal process, any allegedly unlawful detention "forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id.* at 390 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts*, §119, pp. 885-886 (5th ed. 1984). Accordingly, to the extent Defendants have properly characterized aspects of Plaintiffs' Complaint as asserting a claim for damages under §1983 for false arrest[9] such claims either did not exist or, at the very least, were prescribed at the time of filing of the instant action on February 5, 2014. (See Rec. Doc. 1).

---

[8] See, e.g., *Castellano v. Fragozo*, 352 F.3d 939, 948 (5th Cir. 2003) ("a warrantless arrest is not pursuant to legal process").

[9] Notwithstanding Plaintiffs characterizations to the contrary in their Response (Rec. Doc. 14), the Complaint expressly refers to "false arrests and unjust prosecutions." (Rec. Doc. 1 at 7).

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss is **GRANTED, IN PART**, to the extent it seeks dismissal of any claims of false arrest.

**D. Claims against Mayor Eschete and the City of Thibodaux**

Applying the standards of Fed. R. Civ. P. 12(b)(6), this Court must dismiss any claims that fail to rise above the level of mere conclusory allegations. In this respect, it is clear that Plaintiffs' claims against Defendant Tommy Eschete, the Mayor of Thibodaux, and the City of Thibodaux itself must be dismissed. The sole claim in Plaintiffs' Complaint as to these Defendants are as follows:

> On information and belief, the plaintiffs allege that certain municipal officials of the City of Thibodaux including the Mayor knew, should have known, or upon proper investigation would have known, that municipal employees and agents were violating the constitutional rights of the plaintiffs . . . .

(Rec. Doc. 1 at 9). These are conclusory statements that do not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, *supra*, 577 F.3d at 603.

In a similar context in *Sanders v. English*, 950 F.3d 1152 (5th Cir. 1992), the Fifth Circuit affirmed dismissal of claims against a Police Chief when there was no evidence from which to infer the chief partook in any of the activity leading up to the

13

defendant's arrest. *Id.* at 1159-60. This, notwithstanding the fact that the chief elected not to pursue further investigation of certain exculpatory statements of alibi witnesses that were brought to his attention. *Id.* As such, the claims against Defendants Eschete and the City of Thibodaux in the instant Complaint are even further attenuated from the operative facts than were those in *Sanders*, *supra*. Nothing in the Complaint suggests that Plaintiffs protested their innocence to any significant degree or that the Mayor or city officials turned a deaf ear on any such complaints. Although the Court in *Sanders* was reviewing the pleadings in the context of a summary judgment motion, there is not a single factual allegation contained in Plaintiffs' Complaint here that suggests involvement on the part of Mayor Eschete, nor even that the fact of Plaintiffs' arrests was known to him, let alone that he failed to pursue exculpatory evidence. The sole facts alleged relating to Mayor Eschete are that he opposed an investigation by the City Council into the tire-slashing incident. The impetus for such investigation is merely alleged to relate to complaints received by City Councilwoman, Constance Johnson, from Defendant Shontell Clark. There is no allegation of any information provided either to Councilwoman Johnson or Mayor Eschete implicating Plaintiffs in the instant action. Neither does the Complaint contain any

14

allegations, beyond those merely conclusory,[10] as to any "pattern or practice" of deliberate indifference by city officials, as required for a claim of municipal liability for purposes of § 1983. "[U]nder § 1983, local governments are responsible only for 'their *own* illegal acts.' They are not vicariously liable under § 1983 for their employees' actions. Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. These are the actions for which the municipality is actually responsible." *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal citations omitted). Indeed, deliberate indifference "is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . Thus, when city policymakers are on actual or constructive

---

[10] Plaintiffs state without any factual support: "officials reacted with deliberate indifference to the violation of the constitutional rights of the plaintiffs, in accord with the long-standing municipal policy of failing and refusing to implement procedures for effective review and investigation of complaints of police misconduct." (Rec. Doc. 1 at 9-10). This is insufficient to survive the present motion. *See Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996)("In a recent *en banc* opinion, *Schuelta v. Wood*, this court determined that when a plaintiff sues a public official under §1983, the district court must insist on heightened pleading by the plaintiff."); *see also*, Ashcroft *v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegation,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. at 1359 (internal citations omitted).

While conscious of and adhering to its duty to view the allegations in the light most favorable to Plaintiffs, the Court is unable to discern "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" as to the claims against the Mayor and City. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. This is insufficient to survive the Defendants' Motion to Dismiss as to all claims against these particular defendants. *Id.*

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim is **GRANTED, IN PART**, to dismiss all claims against Mayor, Tommy Eschete, and the City of Thibodaux, **without prejudice** to the rights of Plaintiffs to amend their complaint consistent with applicable federal rules of procedure and substantive law, including applicable prescriptive periods within which to file same.

### E. Involuntary Confession Claims

Applying the standards of Rule 12(b)(6) discussed above, it is clear that any claims of Plaintiffs relating to involuntary

16

or coerced confessions do not survive the instant motion. In this respect, Plaintiffs' Complaint states: "The named defendants aided, abetted, encouraged and supported threats, intimidation or directly participated in such gross misconduct in order to induce the plaintiffs to make confessions which the defendants knew or should have known were untrue." (Rec. Doc. 1 at 7). Further, the Complaint states: "[i]n causing the plaintiffs to be arrested, incarcerated, and interrogated concerning crimes for which the defendant police officers knew that the plaintiffs were innocent, the police officers knew or should have known that they were violating the constitutional rights set forth [in the Complaint]." (Rec. Doc. 1 at 8).

These are quintessentially conclusory allegations that contain no factual content from which to ascertain their plausibility. Indeed, the only factual allegations concerning any form of coercion or intimidation in the Complaint are those relating to the alleged harassment of Defendant Clark aimed at securing his cooperation in the conspiracy. There are no facts suggesting any form of coercive or intimidating behavior (apart the arrests and detentions of Plaintiffs) directed at Plaintiffs themselves.

Accordingly, **IT IS ORDERED** that Defendants' Motion is **GRANTED, IN PART,** to dismiss any claims for damages stemming from involuntary confessions on the part of Plaintiffs.

17

**F. Malicious Prosecution/Fourth Amendment Claims**

In light of the foregoing, Plaintiffs' sole surviving claim is for what is often (less than accurately) termed "malicious prosecution" under §1983.[11] It must be noted that the precise contours of this cause of action have been and remain the subject of considerable disagreement and confusion among the lower courts and the unsettled nature of the law in this area likely accounts for some of the relative vagaries of Plaintiff's Complaint.[12] This disagreement has been discussed at length in contexts more suitable than the instant motion and the Court will therefore merely address those aspects of the remaining cause of action necessary for disposition of the motion.[13]

---

[11] Because § 1983 requires some showing that the plaintiff has been deprived of a federal right, but no constitutional provision specifically guarantees against the institution of groundless criminal prosecutions, a "malicious prosecution" claim under § 1983 is a misnomer. *Grody v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002).

[12] See, e.g., *Castellano v.* Fragozo, 352 F.3d 939, 945 (5th Cir. 2003) ("We have been inexact in explaining the elements of a claim for malicious prosecution brought under the congressional grant of the right of suit under 42 U.S.C. § 1983. We are not alone. Other circuits have been facing similar difficulties and share with us a common shortcoming—either not demanding that this genre of claims identify specific constitutional deprivations or struggling in their efforts to do so. This laxness has tolerated claims in which specific constitutional violations are often embedded, but float unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution.").

[13] For full discussions of the evolution of the "malicious prosecution" action in the context of §1983, see *Albright v. Oliver*, 510 U.S. 266 (1994); *Castellano v. Fragozo*, 352 F.3d 939 (2003); John T. Ryan, Jr., Note, *Malicious Prosecution Claims under Section 1983: Do Citizens Have Federal Recourse*, 64 Geo. Wash. L. Rev. 776 (1995) (hereinafter "Malicious Prosecution"); Martin A. Schwartz & Kathryn R. Urbonya, *Section 1983 Litigation* at 64-67, Federal Judicial Center (2d ed. 2008).

The tension in this area of the law inheres in disagreement over whether a plaintiff may properly state a claim under §1983 arising out of the common-law tort of malicious prosecution. After the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994) and subsequent circuit decisions, it is settled that a state law claim of malicious prosecution is not, in itself, actionable under § 1983 without implicating some deprivation of a federal right. *See, e.g., Grody v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002). However, there is disagreement among the federal circuits whether an actionable federal constitutional deprivation exists co-extensive with the elements of the state-law malicious prosecution cause of action, such that proper allegation of the elements of such a claim suffices for purposes of a § 1983 suit. *Id.* Under prior Fifth Circuit law, this was indeed the case. *See id.* ("Nevertheless, the rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive." (citing *Evans v. Ball*, 168 F.3d 856, 862 n.9 (5th Cir. 1999)("[M]alicious prosecution may be a constitutional violation, but only if all of its common law elements are established . . . ."))). Thus, the plaintiff's burden for purposes of a § 1983 claim of this type (when Louisiana law was

19

implicated) was to prove: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. *Grody*, *supra*, 294 F.3d at 727 (citing *Piazza v. Mayne,* 217 F.3d 239, 245 (5th Cir.2000); *Miller v. East Baton Rouge Parish Sheriff's Dep't,* 511 So.2d 446, 452 (La.1987)).

In its most recent decision on this issue, however, the Fifth Circuit, reviewing a prior panel decision *en banc*, had occasion to re-visit the constitutional "malicious prosecution" action in detail. *See Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Following an extensive and scholarly review of prior circuit precedent and relevant intervening Supreme Court decisions, the court concluded:

> We are persuaded that we must return to basics. And in doing so we conclude that no such freestanding constitutional right to be free from malicious prosecution exists. This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted. In this effort, we first look at the state law tort of malicious prosecution and then look to the enforcement of constitutional protections enjoyed by persons accused of crimes, all as informed by the decision of the Supreme Court in *Albright v. Oliver.*

*Castellano*, *supra*, at 945. In *Albright v. Oliver*, a warrant was issued for the plaintiff's arrest for "sale of a substance which looked like an illegal drug." 510 U.S. at 268. When the plaintiff learned of the outstanding warrant, he surrendered himself to authorities and was released on bail. Ultimately, the prosecution against the plaintiff was dismissed on the grounds that the charged crime was not an offense under Illinois law. *Id.* Thereafter, the plaintiff brought suit claiming infringement of a "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Albright*, 510 U.S. at 268. The federal district court granted the defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), which decision was affirmed on appeal to the Seventh Circuit. *Id.* In a plurality opinion joined by a total of four justices, the Supreme Court affirmed dismissal of the plaintiff's complaint, noting specifically his exclusive reliance upon principles of substantive due process and failure to state a claim under the Fourth Amendment. In so doing, the Court re-emphasized its statement from *Graham v. Connor*, 409 U.S. 386, 395 109 S.Ct. 1865, 1871 (1989), that "[w]here a particular Amendment 'provides an explicit textual source of constitutional' protection against a particular sort of

21

government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273. In the plurality's opinion, the Framers considered the Fourth Amendment to be the proper avenue for analyzing matters of pretrial deprivations of liberty. However, the Court "express[ed] no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he [had] not presented that question in his petition for certiorari." *Id.* at 275. The Court did hold, however, "that substantive due process, with its 'scarce and open-ended' 'guideposts,' . . . [could] afford him no relief." *Id.* Thus, in the wake of *Albright*, many questions persisted as to whether claims relating to the initiation of prosecutions without probable cause might ever properly be analyzed under principles of due process. It was in this context that the Fifth Circuit had occasion to review the law in *Castellano v. Fragozo*, *supra*.

In *Castellano*, the plaintiff had been wrongfully convicted of arson based upon manufactured evidence and perjured testimony, the production of which was facilitated by a police officer in cooperation with a former employee of the plaintiff. 352 F.3d at 943. The tainted evidence was used to secure an affidavit from the District Attorney, which, in turn, was

22

presented to a magistrate judge for issuance of a warrant. *Id.*[14]
On his third habeas attempt, the plaintiff's conviction was set
aside by the state court of appeals and remanded to the trial
court, at which point the District Attorney dismissed the case
for lack of sufficient evidence. *Castellano*, 352 F.3d at 943. The
plaintiff then brought suit, ultimately removed to federal
court, alleging the defendants were guilty of malicious
prosecution and had denied him rights secured by the First,
Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id.* at
944. In pretrial proceedings, all but three defendants were
dismissed from the case, and the legal issues considered
focused primarily on the Texas state tort law of malicious
prosecution, which the magistrate judge, relying apparently on
*Albright*, *supra*, found to be sufficient to state an actionable
claim under the Fourth--but not the Fourteenth--Amendment. *Id.*
The jury returned a verdict for the plaintiff, awarding
compensatory and punitive damages. *Id.* Judgment on the verdict
was affirmed by a divided panel of the Fifth Circuit, which
court ultimately granted *en banc* review. *Id.* Following the
extensive review of pertinent case law referenced above, the

---

[14] It is noted that the issues in *Castellano* were further complicated by
principles of prosecutorial immunity based upon the actual trial testimony of
the implicated officers which was ultimately used to secure the plaintiff's
conviction. *Castellano*, 352 F.3d at 958 ("[O]n remand Castellano will face
the well-established rule that prosecutors and witnesses, including police
officers, have absolute immunity for their testimony at trial.") These issues
are not presented by the facts of the case at bar, given the lack of trial,
and are therefore not addressed in any detail.

Fifth Circuit concluded the district court erred in resting its judgment "solely on the Fourth Amendment for the reason that the award of damages [did] not distinguish between trial and pretrial events." *Castellano*, 352 F.3d at 960. As a result, the Fifth Circuit remanded to the district court for a new trial of the plaintiff's claims under the Fourth and Fourteenth Amendments. *Id.* This result appears to be based on a reading of *Albright* that does not entirely foreclose the possibility of relief under § 1983 based on a denial of due process under the Fourteenth Amendment in "malicious prosecution"-type cases, particularly where distinct pretrial and trial periods are implicated.[15] The court stated:

---

[15] It should be noted that there are three general theories for asserting a § 1983 claim against a state under the Fourteenth Amendment: (1) where the state deprives an individual of a specific protection defined in the Bill of Rights (made applicable to the states via incorporation through the Fourteenth Amendment); (2) where the state infringes a substantive right by way of certain arbitrary government action that remains unremedied regardless of the fairness of the procedures used to implement them (i.e., a substantive due process violation); or (3) where an injury occurs and adequate procedural remedies exist, such that the constitutional violation does not occur until the state is given and fails to avail itself of the opportunity to remedy the violation (i.e., a procedural due process violation). In the former two scenarios, the constitutional violation coincides with the state action, while in the third situation, the deprivation through state action of a protected interest in life, liberty, or property is not in itself unconstitutional unless the state deprives the interest *without due process of law*. Thus the constitutional violation under this latter scenario is further attenuated from the original state action, and occurs when the state fails to act pursuant to adequate procedures. *See Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983 (1990); *see* also, Malicious *Prosecution*, *supra*, note 13 at 788-89.

This Court reads *Castellano*, *supra*, to suggest that Scenario (3) could plausibly exist, in contrast with the present case, where perjured testimony and/or manufactured evidence is presented at trial, thereby rising to the level of a procedural due process violation under the Fourteenth Amendment. Although *Castellano* also does not appear to foreclose the possibility of a

*Albright* rejected the contention that the
initiation of criminal proceedings without
probable cause is a violation of substantive
due process, holding that petitioner must
look to the explicit text of the Fourth
Amendment as a source of protection for the
"particular sort of government behavior" at
issue. To the point, causing charges to be
filed without probable cause will not
without more violate the Constitution. So
defined, the assertion of malicious
prosecution states no constitutional claim.
It is equally apparent that additional
government acts that may attend the
initiation of a criminal charge could give
rise to claims of constitutional
deprivation.

The initiation of criminal charges without
probable cause *may set in force events that
run afoul of explicit constitutional
protection—the Fourth Amendment if the
accused is seized and arrested, for example,
or other constitutionally secured rights if
a case is further pursued.* Such claims of
lost constitutional rights are for violation
of rights locatable in constitutional text,
and some such claims may be made under 42
U.S.C. § 1983. Regardless, they are not
claims for malicious prosecution and
labeling them as such only invites
confusion.

*Castellano*, 352 F.3d at 953-54 (emphasis added).

---

substantive due process violation under some circumstances (e.g., Scenarios
(1) and (2)), this would not appear to be a viable option in cases where the
alleged harm is pretrial detention stemming from prosecution initiated
without probable cause, which *Albright, supra*, concluded was properly
asserted under the Fourth Amendment.

Although many questions persist about the viability of "malicious prosecution"-type causes of action for purposes of § 1983 claims in the wake of *Castellano*, at least one matter is settled in light of the foregoing: a plaintiff may state an actionable claim under the Fourth Amendment arising out of pretrial detention resulting from initiation of a prosecution without probable cause. Of additional import for purposes of the instant motion, the Fifth Circuit in *Castellano* stated:

> We have no occasion here to consider afresh the federal common law footing of our insistence that a state criminal proceeding terminate in favor of a federal plaintiff complaining of constitutional deprivations suffered in a state court prosecution, a rule reflecting powerful government interests in finality of judgments. Nor do we face the kindred exercise in deciding when such a claim accrues under applicable limitations periods. Justice Scalia's opinion in *Heck v. Humphrey* answers any question of limitations in the overwhelming percentage of cases, including this case. It concludes that no such claim accrues until the conviction has been set aside where, as here, the suit calls the validity of the conviction into play.

*Castellano*, 352 F.3d at 959 (citing *Heck v. Humphrey*, 512 U.S. 477, 484-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Here, Defendants have challenged the sufficiency of Plaintiffs' Complaint on two grounds: (1) that all of the claims stated therein are time-barred and (2) as to any claims that may not be time-barred (i.e., Plaintiffs' quasi-malicious-

26

prosecution claim), Defendants are not properly named as parties. (See Rec. Doc. 5-1). In light of the Fifth Circuit's holding in *Castellano* and the Supreme Court's *Heck* decision, these arguments are without merit.

To the extent Plaintiffs allege a constitutional injury stemming from their pretrial detentions and the initiation of a criminal prosecution, which claims are rooted in the Fourth Amendment, they are entitled to bring a claim for damages under § 1983. Nevertheless, the Fifth Circuit has insisted that "the anchor of constitutional claims be visible," as distinct from separate state law claims. *Castellano*, 352 F.3d at 960. The Court notes that Plaintiffs do not expressly tie their claims here to the Fourth Amendment, asserting instead violations of their rights secured "by the Constitution of the United States and the Constitution of the State of Louisiana." (Rec. Doc. 1 at 9). Accordingly, the Court cannot find that plaintiffs have pled the constitutional deprivations complained of with sufficient specificity or visibility to comply with *Castellano*'s mandate, *supra*. Nevertheless, the facts alleged would appear to support the type of action contemplated by *Albright* and *Castellano*, and Plaintiffs should be afforded an opportunity to amend their Complaint to comply with *Castellano's* mandate concerning specificity, given that the jurisprudence in this area leaves

27

the precise contours of this cause of action less than clear. Thus, without addressing Defendants' prescription challenge, the Court will afford Plaintiffs fourteen days from the issuance of this Order to seek to leave to file an amended Complaint bringing their allegations in line with the *Albright, Heck,* and *Castellano* opinions.

As to Defendants' second, and alternative, contention, that they are not properly named for purposes of the claims relating to the initiation of the prosecution, these are without merit. In the context of this type of action, "'prosecutor' is not used narrowly in the modern sense of 'prosecuting attorney' but in the sense of any person (or, in a § 1983 action, any state actor) who initiates or procures a criminal proceeding. Consequently, an officer may be liable for malicious prosecution if his 'malice results in an improperly motivated prosecution without probable cause' and even if the officer had no direct influence over the prosecuting attorney." *Gordy v. Burns*, 294 F.3d 722, 728 (5th Cir. 2002) (internal citations omitted, citing *Wheeler v. Nesbitt*, 65 U.S. 544, 551, 24 How 544, 551 (1860); *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988)).[16]

---

[16] The Court recognizes that *Gordy* has been abrogated by subsequent cases to the extent it adhered to the prior view of a common-law malicious prosecution action as sufficient to state a constitutional harm for purposes of § 1983. Nevertheless, the principle that a broader class of state actors may be held liable for those actual constitutional harms caused by their actions resulting from the malicious institution of prosecution than merely prosecuting attorneys appears to retain merit. This is particularly so where

Additionally, it is no answer that a police officer "could not have terminated the proceedings unilaterally once the wheels of the criminal justice system were already in motion." *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992)(citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)(Posner, J.)("[I]f police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.") Taking Plaintiffs' allegations that the defendant officers conspired to supply false information to a confidential informant for purposes of initiating the subject prosecution as true (as this Court must for purposes of the present motion), it is clear that Plaintiffs' claims survive the standards of Fed. R. Civ. P. 12(b)(6). Defendants have not challenged, and this Court need not address, whether Plaintiffs have stated a sufficient claim for relief under the Fourteenth Amendment for purposes of § 1983 liability. Notwithstanding Plaintiffs' apparent reliance on due process claims in their Response (Rec. Doc. 14), the relevant matters in the present context are the allegations contained in the Complaint.

---

the cause of action relating to such proceedings has been effectively broadened by untethering it from the specific *prima facie* elements of a state law malicious prosecution claim following the *Castellano* line of cases (assuming, of course, that the plaintiff succeeds in establishing an independent constitutional harm).

In the event Plaintiffs succeed in amending their complaint to state cognizable causes of action pertaining to the initiation of charges against them accompanied by specific constitutional harms arising under specific constitutional provisions, the Court entertains supplemental jurisdiction, under 28 U.S.C. §1367, over any state-law cause of action forming part of the same case or controversy (i.e., those sharing a common nucleus of operative fact).

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss is **DENIED, IN PART**, to allow Plaintiffs the opportunity to seek leave to amend their Complaint for purposes of stating with required specificity the nature of the claims asserted relating to their pretrial detentions.

## VI.  CONCLUSION

In summary, **IT IS ORDERED:**

(1) That Defendants' Motion to Dismiss is **GRANTED, IN PART**, to dismiss all claims by Plaintiffs for false arrest against all Defendants, to the extent any such claims are asserted;

(2) Further, that Defendants' Motion to Dismiss is **GRANTED**, **IN PART**, to dismiss all claims against Defendants Eschete and the City of Thibodaux; and

30

(3)   That Defendants' Motion to Dismiss is further **GRANTED, IN PART**, to dismiss any claims against Defendants relating to involuntary or coerced confessions.

(4)   However, it is **ORDERED** that Defendants' Motion to Dismiss is **DENIED, IN PART,** as to those portions of Plaintiffs' Complaint that state constitutional violations arising out of their pretrial detention, as well as any state law causes of action over which the Court may exercise supplemental jurisdiction. In the event Plaintiffs fail to amend their Complaint so as to bring it into conformity with applicable Supreme Court and Fifth Circuit jurisprudence within **fourteen days** of the issuance of this opinion, the Court will proceed to dismissal.

The foregoing is **ORDERED** subject to any rights of parties to amend pleadings consistent with applicable Federal Rules of Civil Procedure and substantive law for purposes of clarifying their asserted causes of action and defenses.

New Orleans, Louisiana, this 12th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE